## UVEGES v. PENNSYLVANIA.

No. 75.   Argued November 15–16, 1948.—Decided December 13, 1948.

*Albert A. Fiok* argued the cause and filed a brief for petitioner.

*William S. Rahauser* argued the cause for respondent. With him on the brief was *Craig T. Stockdale.*

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner is held by the Commonwealth of Pennsylvania in the Western State Penitentiary on sentences totalling a minimum of twenty and a maximum of forty years pronounced pursuant to his pleas of guilty to four indictments charging burglary.  We granted certiorari to review a denial by the Supreme Court of Pennsylvania of his petition to appeal from a judgment of the Superior Court which affirmed a dismissal of a petition for *habeas corpus* in the Court of Common Pleas of Allegheny County.  Petitioner claimed in the state courts, and now claims here, that he was denied counsel in the proceedings leading to his convictions in violation of his right to counsel under the due process of law clause of the Fourteenth Amendment.

From the pleadings and decisions of the Pennsylvania courts, certified to us as the record in the Supreme Court of Pennsylvania, and without reliance upon any additional allegations in the petition for certiorari, the facts and allegations as to denial of constitutional rights may be summarized as follows: On October 27, 1938, petitioner Uveges, a youth seventeen years of age, was faced with

four district attorney's indictments charging four separate burglaries. Upon his plea of guilty to these indictments, Uveges was sentenced in the Court of Oyer and Terminer of Allegheny County to from five to ten years on each indictment, the sentences to run consecutively. In his petition to the Court of Common Pleas for a writ of *habeas corpus* in 1946, petitioner alleged that he was not informed of his right to counsel nor was counsel offered him at any time during the period between arrest and conviction. He also alleged that "frightened by threats of dire consequences if he dared to stand trial, relator pleaded guilty under the direction of an assistant district attorney, with the understanding that a sentence to Huntington Reformatory would be imposed." We disregard this last allegation because it was not presented to the Supreme Court of Pennsylvania in the petition for allowance of appeal. A rule to show cause why the writ should not issue was granted. The answer denied that petitioner was entitled to counsel but did not deny the allegation of threats by the assistant district attorney. The Court of Common Pleas, without a hearing, entered an order dismissing the petition and denying the writ. The Superior Court of Pennsylvania affirmed, 161 Pa. Super. 58, 53 A. 2d 894, noting that Uveges had been arrested once before for burglary and confined in a reformatory for ten months. The State Supreme Court, on September 29, 1947, denied a petition for allowance of appeal which repeated the allegations of youth and denial of the right to counsel. 161 Pa. Super. xxv, 53 A. 2d 894. We think this record adequately raised the federal constitutional question as to denial of counsel. Pennsylvania makes no contrary contention.[1] We granted the

---

[1] Excerpts from the brief of the Commonwealth show its acceptance of the actual issue:

"3. The basic question of this case is whether the petitioner was denied due process of law by reason of the fact that the Common-

motion to proceed *in forma pauperis* and the petition for a writ of certiorari, 334 U. S. 836, in order to examine the important constitutional question presented by petitioner's claim of right to counsel.[2]

Since our understanding is that in Pennsylvania *habeas corpus* is available to an accused whose constitutional right to counsel has been denied,[3] and since respondent does not suggest that the state bars a remedy by *habeas corpus* in the circumstances of this case because no appeal was taken from the original conviction, we proceed to the merits of this controversy.

Some members of the Court think that where serious offenses are charged, failure of a court to offer counsel in state criminal trials deprives an accused of rights under the Fourteenth Amendment. They are convinced that

wealth of Pennsylvania did not appoint Counsel to represent him in the proceedings leading to his imprisonment. It is the contention of the respondent that the federal Constitution did not require that the state appoint Counsel to represent this accused since

"(A) The requirement of the 6th Amendment to the federal constitution that the accused be represented by counsel in *all* criminal cases does not apply to the states and

"(B) It is only in a capital case or under other special circumstances *not here present* that a state is required by the 14th Amendment to the Federal Constitution to appoint counsel to represent the accused."

"The vital question to be decided, and, in our view of the case the only significant question, is whether the accused, under such facts as are properly before this Court, must be represented by counsel in order that the process leading to his confinement may be deemed *due* process."

[2] Petitioner in his petition for certiorari bases his claim for review in part on procedural irregularities allegedly in violation of state statutes, such as the failure of the district attorney personally to sign the indictments. Since these allegations, even if true, present no federal question, we have not considered them.

[3] See *Commonwealth ex rel. McGlinn* v. *Smith*, 344 Pa. 41, 47–48, 24 A. 2d 1, 4–5; *Commonwealth ex rel. Penland* v. *Ashe*, 341 Pa. 337, 341–42, 19 A. 2d 464, 466.

the services of counsel to protect the accused are guaranteed by the Constitution in every such instance. See *Bute* v. *Illinois,* 333 U. S. 640, dissent, 677–79. Only when the accused refuses counsel with an understanding of his rights can the court dispense with counsel.[4] Others of us think that when a crime subject to capital punishment is not involved, each case depends on its own facts. See *Betts* v. *Brady,* 316 U. S. 455, 462. Where the gravity of the crime and other factors—such as the age and education of the defendant,[5] the conduct of the court or the prosecuting officials,[6] and the complicated nature of the offense charged and the possible defenses thereto [7]— render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, the latter group holds that the accused must have legal assistance under the Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not. Only a waiver of counsel, understandingly made, justifies trial without counsel.

The philosophy behind both of these views is that the due process clause of the Fourteenth Amendment or the Fifth Amendment requires counsel for all persons charged with serious crimes, when necessary for their adequate defense, in order that such persons may be advised how to conduct their trials. The application of the rule varies as indicated in the preceding paragraph.

Under either view of the requirements of due process, the facts in this case required the presence of counsel at

---

[4] See *Rice* v. *Olson,* 324 U. S. 786, 788–89; *Walker* v. *Johnston,* 312 U. S. 275, 286; *Johnson* v. *Zerbst,* 304 U. S. 458, 468.

[5] See *e. g., Wade* v. *Mayo,* 334 U. S. 672, 683–84; *De Meerleer* v. *Michigan,* 329 U. S. 663, 664–65; *Betts* v. *Brady, supra,* at 472, *Powell* v. *Alabama,* 287 U. S. 45, 51–52, 71.

[6] See *e. g., Townsend* v. *Burke,* 334 U. S. 736, 739–41; *De Meerleer* v. *Michigan, supra,* at 665; *Smith* v. *O'Grady,* 312 U. S. 329, 332–33.

[7] See *e. g., Rice* v. *Olson,* 324 U. S. 786, 789–91.

petitioner's trial. He should not have been permitted to plead guilty without an offer of the advice of counsel in his situation. If the circumstances alleged in his petition are true, the accused was entitled to an adviser to help him handle his problems. Petitioner was young and inexperienced in the intricacies of criminal procedure when he pleaded guilty to crimes which carried a maximum sentence of eighty years.[8] There is an undenied allegation that he was never advised of his right to counsel. The record shows no attempt on the part of the court to make him understand the consequences of his plea. Whatever our decision might have been if the trial court had informed him of his rights and conscientiously had undertaken to perform the functions ordinarily entrusted to counsel, we conclude that the opportunity to have counsel in this case was a necessary element of a fair hearing.

*Reversed.*

MR. JUSTICE FRANKFURTER, with whom MR. JUSTICE JACKSON and MR. JUSTICE BURTON concur, dissenting.

Exercise of this Court's jurisdiction is peculiarly for this Court's own determination, and is neither to be conceded nor withheld by counsel's admission. In fact, however, Pennsylvania does not admit that the adjudication by the Supreme Court of Pennsylvania is reviewable here. It urges that "under such facts as are properly before this Court" petitioner's claim must fail. The circumstances under which this Court is reversing the Supreme Court of Pennsylvania show such disregard for the distribution of judicial power between this Court and the highest courts of the States, that I am constrained to dissent.

As the caption announces, this case was brought here by a writ of certiorari directed to the Supreme Court of

---

[8] Purdon's Pa. Stat. Ann., tit. 18, § 4901.

Pennsylvania. We issued the writ solely on the basis of allegations in the petition for certiorari. In sum, these were the allegations: (1) petitioner was held for two weeks without being able to consult friends or relatives; (2) because of his youth, his ignorance and the complexity of the charges against him, petitioner was incapable of meeting them intelligently without assistance of counsel; (3) his request for legal aid to determine his plea was met with a threat of a severe sentence if the Commonwealth were put to the expense of a trial; (4) he was promised by the District Attorney a short sentence at a reformatory for a plea of guilty; (5) he was not informed of the consequences of a plea of guilty, was unaware of its effect, and intended to plead guilty only to one of several indictments.

On these allegations, without more, we granted the petition for certiorari on June 7, 1948. The record before the Supreme Court of Pennsylvania, on the basis of which that Court denied the petition for an appeal to review the order of the Superior Court affirming the refusal of the Court of Common Pleas of Allegheny County to issue a writ of *habeas corpus,* was not before us when we granted certiorari. Not until September 8, 1948, was that record sent here by the Supreme Court of Pennsylvania; it was lodged here on September 20, 1948. It now appears that the allegations on which this Court issued its writ to the Pennsylvania Supreme Court were not before that Court in the paper it requires to be filed to determine whether under Pennsylvania law an appeal should be entertained. More particularly, the five allegations summarized above had not been before the Supreme Court of Pennsylvania when it denied an appeal. Apart from two claims involving matters of local procedure, the only ground on which appeal was sought from the Pennsylvania Superior Court was the bare claim that petitioner was denied assistance of counsel, unsupported

by those considerations of unfairness which, under our rulings, make such denial a denial of the due process guaranteed by the Fourteenth Amendment.

Having granted a review of the action of the Pennsylvania Supreme Court on the basis of allegations not before that Court, this Court now holds that the Supreme Court of Pennsylvania has flouted the Constitution of the United States. It does so despite the fact that at the bar of this Court the representative of Pennsylvania unreservedly admitted that the writ of *habeas corpus* would not have been dismissed by the courts of Pennsylvania if the allegations that were made here had been made there. We are reviewing what the Pennsylvania Supreme Court did. The only matter before that Court was a petition for an allowance of an appeal from the order of the Superior Court of Pennsylvania. The only matter properly before us is disallowance of that appeal. If the Supreme Court of Pennsylvania was, as a matter of State law, authorized to disallow the appeal because the claim was not formulated with adequate particularity, a federal question is wanting and our writ, being without proper foundation, should be dismissed. The fact that on adequate allegations in a new proceeding before an appropriate Pennsylvania court the claim may be successfully sustained, gives this Court no warrant for assuming that the proper allegations were before the Pennsylvania Supreme Court so as to transmute its denial of an appeal into the denial of a properly presented federal claim.

This Court now makes such an assumption. If we are to decide a case, however grave the issue, only on what appears according to the record, there is no basis for finding that the Supreme Court had before it anything but the petition for allowance of an appeal. This is so even if we assume, although nothing in the record affords

us the right to do so,[1] that the records in the lower courts of Pennsylvania were filed in its Supreme Court before it disallowed an appeal. Appellants often do not raise all that they urged in a lower court, and they sometimes raise an issue for the first time in the appellate court. In any event, the petition here was to review the adjudication of the Supreme Court of Pennsylvania and our writ ran to that Court. This is not a case where our writ turns out to be formally misdirected due to the fact that the record to be sent up was lodged, according to local procedure, in one court rather than another. In such a case what

[1] The relevant docket entries of the three Pennsylvania courts which considered this case strongly indicate that all papers other than the petition for allowance of an appeal were in the Court of Common Pleas for Allegheny County when the Pennsylvania Supreme Court was determining the allowance of an appeal. The "Docket Entries" in the Superior Court of Pennsylvania record that on July 29, 1947, twelve days after that court affirmed the order of the Court of Common Pleas, the Record of the Court of Common Pleas, which had been filed in the Superior Court, was remitted to the Court of Common Pleas. The latter court's "Appearance Docket Entry" shows that it was received on the same day. Twenty-four days later, on August 22, 1947, the petitioner filed in the Supreme Court of Pennsylvania his petition for allowance of appeal from the judgment of the Superior Court. The Docket Entries in the Supreme Court of Pennsylvania do not show that the Record which previously had been sent back to the Court of Common Pleas by the Superior Court had been filed in that Court.

After this Court issued its writ on June 7, 1948, petitioner's attorney filed a "Praecipe" with the Clerk of the Supreme Court of Pennsylvania requesting that the papers that now make up the record in this Court be certified to this Court. Although this was done under the Clerk's signature with a statement that "the foregoing Record . . . is a true and faithful copy of the Record and Proceedings of THE SUPREME COURT OF PENNSYLVANIA . . . in a certain suit therein pending . . ." that Record shows that the Supreme Court of Pennsylvania, after our writ of certiorari had been directed to it, had to issue its supplemental certiorari to the Court of Common Pleas to obtain the Record.

is reviewed here, despite the misdirection, is the same record that was before the State court which is to be reviewed. The writ runs to the other court only to get the record here. This case presents quite a different situation. We cannot review the judgment of the Court of Common Pleas of Allegheny County, or that of the Superior Court of Pennsylvania, because neither is a final judgment under Pennsylvania law if either involved a federal constitutional issue. For our purpose of "finality," such an issue must go to the Supreme Court of Pennsylvania because that Court has obligatory jurisdiction to review it. Pa. Stat. Ann., tit. 17, § 190; *Commonwealth* v. *Caulfield,* 211 Pa. 644; see *Commonwealth* v. *Gardner,* 297 Pa. 498, 500. In bringing here for review the action of that Court we must be governed by what was before that Court and cannot rely on what was not before it.

Unless we are to assume that the Supreme Court of Pennsylvania flagrantly violated its duty under Pennsylvania law to grant an appeal where a violation of a right secured by the Constitution of the United States is properly raised, we must attribute to that court a non-constitutional ground in denying an appeal if it may reasonably be so attributed. If that Court had said explicitly that it requires a more particularized statement for the claim that the petitioner did not plead guilty with full understanding of what he was doing and that the failure to assign him counsel in no wise handicapped him in pleading to the indictments, this Court hardly would find that the Constitution of the United States precludes such a State requirement of particularity in an effort to set aside a sentence eight years after it was imposed. If such a determination by the Supreme Court of Pennsylvania explicitly made would not raise a federal question, it does not raise a federal question if on the record we have a right to infer that such was the implicit ruling of the Pennsyl-

vania Court. That Court may dispose of cases summarily as does this Court. The record here plainly calls for the inference that the claims now made were not adequately presented in the paper upon which the Supreme Court of Pennsylvania acted. A comparison between the statements which the Supreme Court of Pennsylvania had before it when it denied the appeal, and the allegations made in the petition before this Court, on the basis of which we issued the writ of certiorari, affords compelling reason for attributing the disallowance of the appeal by the Pennsylvania Supreme Court to its finding that a claim of lack of due process raised after eight years was made without sufficient particularity to call for a trial on the merits. A tabular view of the claims made in the four courts before which they were pressed clearly establishes not only that what was before the Supreme Court of Pennsylvania was very different from what was urged here, but also different from what was urged before the lower Pennsylvania courts.* A finding that a State court disregarded the Constitution of the United States should not be like a game of blindman's buff.

Since the action of the State court may fairly be sustained on the State ground of failure adequately to present the constitutional claim sought to be raised, we must so interpret it. *Klinger* v. *Missouri,* 13 Wall. 257, 263; *Lynch* v. *New York ex rel. Pierson,* 293 U. S. 52, 54; *Southwestern Bell Telephone Co.* v. *Oklahoma,* 303 U. S. 206, 212. Our reviewing power is of course not to be withheld by excogitating some fanciful or recondite doctrine of local law for a State court decision. Here the State ground is fairly obvious. To reject it is to reach out for a federal issue. The Pennsylvania courts are fully aware of the circumstances under which indigent defend-

---

*[See table on next page.]

CLAIMS MADE IN THE VARIOUS COURTS

| I | II | III | IV |
|---|---|---|---|
| Court of Common Pleas of Allegheny County | Superior Court of Pennsylvania | Supreme Court of Pennsylvania | Supreme Court of the United States |
| Petition for writ of habeas corpus | Court's opinion | Petition for allowance of appeal | Petition for writ of certiorari |
| [1] Bare denial of right to counsel. | [1] Same. | [1] Same. | [1] Failure to assign counsel resulted in unfair trial; disabled him from making intelligent plea and led to overreaching by D. A. |
| [2] Signature lacking on indictment as waiver of grand jury presentation. Claims waiver not read to him. | [2] Same. | [2] Here denied he signed a waiver. | [2] Signature not on indictment. |
| [3] Right of 17-year-old boy to disaffirm plea of guilt. Also claim of threats and promise of shorter sentence. | [3] Apparently no such claim. | [3] No such claim. | [3] Same as No. 3, Column I. |
| | [4] Claims to have entered plea of guilty to only one of nine indictments. | [4] Same. | [4] Same. |
| | | | [5] Held incommunicado for two weeks. [6] Refusal of request for consultation with counsel followed by threats. [7] Witnesses not sworn. |

ants are entitled to the assistance of counsel. See *e. g. Commonwealth ex rel. McGlinn* v. *Smith,* 344 Pa. 41. Only by assuming that the Supreme Court of Pennsylvania was heedless of its duty under the Constitution can we assume that it denied an appeal in this case because of such heedlessness rather than because it enforced allowable requirements by Pennsylvania for asserting a constitutional claim.

Such reasoning is not what is invidiously called legalistic. Law is essentially legalistic in the sense that observance of well-recognized procedure is, on balance, socially desirable. In the well-being of a federalism like ours observance of what on casual view may appear as a sterile technicality is important whenever this Court is brought in potential conflict with State courts. Especially is it important as to those vast reaches of the criminal law which are exclusively within State domain, and which are therefore not subject to the supervision which this Court may exercise over the lower federal courts. Of course this Court has the duty of alertness in safeguarding rights guaranteed by the Constitution of the United States against infringement by the States even in their difficult task of repressing crime and dealing with transgressors. At best, however, intervention by this Court in the criminal process of States is delicate business. It should not be indulged in unless no reasonable doubt is left that a State denies, or has refused to exercise, means of correcting a claimed infraction of the United States Constitution.

Intervention by this Court in the administration of the criminal justice of a State has all the disadvantages of interference from without. Whatever short-cut to relief may be had in a particular case, it is calculated to beget misunderstanding and friction and to that extent detracts from those imponderables which are the ultimate reliance of a civilized system of law. After all, this is the Nation's

450

ultimate judicial tribunal, not a super-legal-aid bureau. If the same relief, although by a more tedious process, is available through a State's self-corrective process, it enlists the understanding and support of the community. Considerations rooted in psychological and sociological reason underlie the duty of abstention by this Court from upsetting convictions by State courts or their refusal to grant writs of *habeas corpus* to those under State sentences, where State action may fairly be attributed to a rule of local procedure and is not exclusively founded on denial of a federal claim. When a State court explicitly rests its decision on a State ground it is easy sailing. But even when a State court summarily disposes of a case without spelling out its ground, led to do so, as is this Court in many cases, by the burden of its docket, it is our duty not to attribute to the State court flouting of the United States Constitution but to infer regard for its own law, if to that law may reasonably be attributed a finding of inadequacy in the mode of presenting the constitutional claim for which relief is here sought on the merits.

I would dismiss the writ, leaving petitioner to pursue in Pennsylvania the claim he makes here.